UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,               Case No. 13-10082

vs.                                  HON. MARK A. GOLDSMITH

EDWARD J. HOLLAND, JR., et al.,

                Defendants.
_____/

**OPINION & ORDER**
**(1) GRANTING THE GOVERNMENT'S AND THE HOLLAND PARTIES' MOTIONS**
**FOR SUMMARY JUDGMENT AS TO PATMON AND YOUNG (Dkts. 361, 363);**
**(2) DENYING PATMON AND YOUNG'S JOINT MOTION TO STAY PROCEEDINGS**
**(Dkt. 370); AND (3) DENYING AS MOOT THE GOVERNMENT'S MOTION TO**
**APPOINT A RECEIVER (Dkt. 362)**

This matter is before the Court for determination of the following: (i) motions for summary judgment filed by Plaintiff the United States of America (the "Government") and by Defendants Edward J. Holland, Jr. ("Holland") and Edward Holland, L.P. ("EHLP" and, together with Holland, the "Holland Parties"), against Defendants the Estate of Frederick Patmon ("Patmon") and Peggy Young, as personal representative of the Estate of Hallison H. Young ("Young") (Dkts. 361, 363); (ii) a joint motion to stay the proceedings filed by Patmon and Young (Dkt. 370); and (iii) the Government's motion to appoint a receiver (Dkt. 362). See 9/18/20 Order (Dkt. 374).[1]

---

[1] After reassignment of this case to the undersigned on August 25, 2020, the parties filed memoranda regarding their positions on how to proceed. After additional briefing, the parties stipulated on the record during the September 17, 2020 status conference that the Court could treat the filings as comprising summary judgment motions by the Government and the Holland Parties, as well as responses and a joint motion to stay from Patmon and Young.

Because oral argument will not assist in the decisional process, the motions will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).  For the reasons discussed below, the Court grants the Government's and the Holland Parties' motions for summary judgment against Patmon and Young.  The Court also denies Patmon and Young's motion to stay the proceedings pending the resolution of litigation in state court.  Finally, the Court denies as moot the Government's motion to appoint a receiver.

## I.    BACKGROUND

The factual background of this case has been described at length in previous opinions and need not be repeated here in full.  See Order Regarding Mots. for Summ. J. (Dkt. 317); Order Regarding Pl. Mot. for Recons. (Dkt. 325).  Briefly, Holland is a renowned songwriter who wrote many classic Motown compositions.  In 1998, Holland assigned his rights to a stream of royalty payments generated by these songs (the "royalty assets") to EHLP, a limited partnership owned by Holland.  Order Regarding Mots. for Summ. J. at 2-4.[2]  After the commencement of this litigation, EHLP sold the royalty assets to a third party for $21 million, and the proceeds of the sale were deposited into the Court's registry as interpleaded funds.  See 4/30/15 Order (Dkt. 118).

The Government initiated this action seeking to recover unpaid federal income taxes owed by Holland. 2d Am. Compl. (Dkt. 30).  As required by statute, the Government joined other parties that might claim interests in Holland's assets, including EHLP and creditors Patmon, Young, and the Royal Bank of Scotland ("RBS").  2d Am. Compl.  A partial final judgment was entered in

---

[2] According to the Holland Parties, EHLP has two owners: (i) the Edward Holland Irrevocable Trust, which owns 99.75% of EHLP, and (ii) Edward Holland Royalty Venture I, Inc., which owns 0.25% of EHLP.  EHLP Mem. at 7 n.4.  It is undisputed that the Government has tax liens that are enforceable against these entities.  Id.  Further, the parties do not contest this Court's prior conclusion that, ultimately, "Holland was the sole owner of the assignee entity, EHLP."  Order Regarding Mots. for Summ. J. at 10.

favor of RBS, which was fully satisfied by a distribution of $10,116,422.75 from the interpleaded funds to RBS.  Stipulated Order of Disbursement to RBS (Dkt. 367).  Thus, the only parties with unresolved claims to the interpleaded funds are the Government, the Holland Parties, Patmon, and Young.[3]

At issue in the present summary judgment motions are the merits of Patmon's and Young's claims to the interpleaded funds.  Patmon and Young claim entitlement to the funds on the basis of unpaid attorney fees stemming from legal work performed on behalf of Holland.  See Patmon & Young ("PY") Resp. at 13-20 (Dkt. 370).  Whether Patmon and Young are entitled to attorney fees is currently the subject of litigation in the Wayne County Circuit Court ("WCCC"), which has been pending since 2004.  Id.  Patmon and Young initiated the WCCC action against Holland and EHLP, among others, but did not join the Government.  See Am. State Court Compl., Exs. 1A & 1B to Holland Parties' Mot. for Summ. J. (Dkts. 285-2, 285-3).

During a hearing held on August 8, 2019, the WCCC dismissed Patmon's and Young's claims against EHLP on the ground that they were bound by this Court's determination that "EHLP was not the alter ego of Mr. Holland."  8/8/19 Hr'g Tr., Ex. A to Joint Status Report, at 121, 137-139 (Dkt. 352-1).[4]  On August 24, 2020, the WCCC memorialized this oral ruling in a written order dismissing with prejudice all claims asserted against EHLP and limiting Patmon's and Young's claims to those asserted against Holland personally.  8/24/20 WCCC Order, Ex. 1 to

---

[3] Music Analytics, Inc. intervened in the action and asserted a cross-claim seeking payment of a finder's fee earned in arranging the sale of the royalty assets.  See Answer & Cross-Claim (Dkt. 160).  The Court entered an order distributing $626,727.95 to that party in full satisfaction of its claim.  See 2d Am. Order Granting Mot. for Preliminary Distribution (Dkt. 192).

[4] The WCCC was referring to this Court's earlier summary judgment ruling rejecting the Government's position that it could recover Holland's unpaid taxes from assets owned by EHLP on theories of alter-ego, nominee, and fraudulent transfer.  Order Regarding Mots. for Summ. J. at 7-11.

EHLP Mem. (Dkt. 364).  The order permitted Patmon and Young to pursue their claims for attorney fees under theories of quantum meruit, breach of contract, account stated, and constructive trust, and to pursue attorney liens.  Id.  Patmon and Young filed a motion for reconsideration, which the WCCC denied on September 21, 2020.  See 9/21/20 WCCC Order, Ex. 1 to EHLP Notice (Dkt. 377-1).

Given EHLP's dismissal from the WCCC litigation, the Government and the Holland Parties seek summary judgment on Patmon's and Young's claims in the present action.  They argue that Patmon and Young are limited to pursuing a remedy against Holland personally and can no longer assert viable claims against EHLP's assets—including the interpleaded funds.  See Gov't Mem. at 1 (Dkt. 361); EHLP Mem. at 8 (Dkt. 363).  The Government and the Holland Parties maintain that, after payment of partnership-level debts of EHLP, the remaining interpleaded funds will be subject to liens against Holland's ownership interest in EHLP.  Gov't Mem. at 15-16; EHLP Mem. at 6-7.

The Government and the Holland Parties state that they have provisionally settled with EHLP's creditors except for EHLP's counsel Clarence Tucker, and that settlement with Tucker is expected.  Gov't Mem. at 17; EHLP Mem. at 3, 15-16.  Because the Government's tax liens against Holland are superior to any judgment that Patmon and Young could obtain against Holland in the state-court action, the Government maintains that it is entitled to the remainder of the interpleaded funds after EHLP's creditors are satisfied.  Gov't Mem. at 14.  Thus, if summary judgment is granted as to Patmon's and Young's claims, the Government and the Holland Parties have provisionally resolved the balance of the case and agree to dismiss the remaining claims pursuant to a proposed stipulated order of dismissal.  See Gov't Mem. at 2; EHLP Mem. at 5.

## II.   STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247-248) (emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

## III.   DISCUSSION

The Government seeks to enforce its tax liens under 26 U.S.C. § 7403, which "authorizes a federal district court, in a suit instituted by the Government, to decree a sale of certain properties

to satisfy the tax indebtedness of delinquent taxpayers." United States v. Rodgers, 461 U.S. 677, 677 (1983). Section 7403 requires the Government to join all persons claiming an interest in the property and broadly mandates that the court presiding over the enforcement action "shall . . . adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property . . . ." 26 U.S.C. § 7403(b)-(c) (emphasis added); see also Hatchett v. United States, 330 F.3d 875, 884 (6th Cir. 2003) ("In a proceeding under § 7403, the district court adjudicates all the matters involved, makes a final determination of the claims, and decrees a sale of the property if the Government's claim is established. § 7403(c)."). Thus, this Court is authorized to determine the priorities of all competing claims to the interpleaded funds.

As reflected in their briefing, Patmon's and Young's alleged interests in the interpleaded funds derive from their claims pending before the state court. PY Resp. at 3. Thus, to establish their entitlement to the interpleaded funds, Patmon and Young must show either (i) that they have asserted claims against EHLP in state court that could give rise to a viable interest in the interpleaded funds, or (ii) that any judgment they could obtain against Holland in state court would be entitled to priority over the Government's tax liens. For the reasons discussed below, Patmon and Young are unable to make either showing.

## A. Claims Against EHLP

As discussed above, Patmon's and Young's claims against EHLP were dismissed on the ground that they were premised on theories that EHLP was Holland's alter-ego, nominee, or fraudulent transferee—theories that this Court has rejected. See 8/8/19 Hr'g Tr. at 121, 137-139; 8/24/20 WCCC Order. Thus, given the present status of the state-court action, Patmon and Young are unable to obtain any judgment or relief against EHLP.

The Government maintains that the WCCC's order dismissing EHLP should be considered a final judgment that may be accorded res judicata effect to bar Patmon's and Young's claims in the present action.  Gov't Mem. at 11; Gov't Suppl. Br. at 2-3 (Dkt. 375).  It is well established that "[t]he rules of res judicata are applicable only when a final judgment is rendered." Restatement 2d of Judgments § 13; see also 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4432 (3d ed. 1998) ("For many years, it has been 'familiar law that only a final judgment is res judicata.'").  Courts have routinely held that interlocutory orders resolving fewer than all claims, such as those granting partial summary judgment, lack the requisite finality for purposes of res judicata.  See, e.g., AVX Corp. v. Cabot Corp., 424 F.3d 28, 31 (1st Cir. 2005); Pure Distribs., Inc. v. Baker, 285 F.3d 150, 156-157 (1st Cir. 2002); Acha v. Beame, 570 F.2d 57, 62-63 (2d Cir. 1978).  Some courts have reasoned that interlocutory orders cannot be considered sufficiently final because they are subject to revision at any time prior to entry of final judgment.  Pure Distribs., 285 F.3d at 157; Acha, 570 F.2d at 63.

There is no dispute that the WCCC's order is an interlocutory order dismissing some claims and parties while permitting other claims to proceed to trial.  Further, the Michigan Court Rules provide that a decision adjudicating fewer than all claims presented in a complaint "is subject to revision before entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties."  Mich. Court Rules § 2.604(A).  Accordingly, the order in question is not a final judgment entitled to res judicata effect.

The Government cites caselaw involving the more fluid finality requirement that some courts have applied in the context of collateral estoppel.  See, e.g., Greenleaf v. Garlock, 174 F.3d 352, 360 (3d Cir. 1999) ("[D]ecisions not final for purposes of appealability may nevertheless be sufficiently final to have issue preclusive effect.").  Indeed, some courts have "relaxed traditional

views of the finality requirement in the collateral estoppel context by applying the doctrine to matters resolved by preliminary rulings . . . ." Robinette v. Jones, 476 F.3d 585, 589 (8th Cir. 2007). Nevertheless, "interlocutory summary-judgment rulings frequently are found unsuitable support for [issue] preclusion." 18A Wright, Miller, & Cooper, Federal Practice and Procedure § 4434; see also Free Speech Coalition v. Attorney Gen. of United States, 677 F.3d 519 (3d Cir. 2012) (holding that an order granting partial summary judgment was not sufficiently firm to be accorded preclusive effect).

Even if this Court were to adopt the "relaxed" view of the finality requirement that some courts have used in the context of collateral estoppel, the Government seeks to rely on the WCCC's order to preclude Patmon's and Young's claims as opposed to specific issues. The Government has not cited, nor is the Court aware of, any authority adopting the more relaxed view of finality in the context of res judicata. To the contrary, authorities recognize that this trend is confined to collateral estoppel. AVX Corp., 424 F.3d at 32 (noting that although the Restatement contemplates a softening of the finality requirement as relates to collateral estoppel, it "appears to adhere to the conventional finality test for merger and bar"); see also 18A Wright, Miller, & Cooper, Federal Practice and Procedure § 4434. Thus, the WCCC's order is not entitled to res judicata effect.

Nevertheless, even in the absence of a dismissal with res judicata effect, Patmon's and Young's theoretically revivable claims against EHLP could not give rise to a viable interest in the interpleaded funds. That is because Patmon's and Young's claims against EHLP are not premised on any alleged wrongdoing by the partnership. Instead, they admit that their claims are premised entirely on alleged wrongdoing perpetuated by Holland. PY Resp. at 5. Specifically, Patmon and Young maintain that they represented Holland in connection with two lawsuits—initiated in 1988 and 1992 against Motown's principal, Berry Gordy—which Holland purportedly settled without

8

their knowledge in 2004.  Id. at 5-6, 14; Order Regarding Mots. for Summ. J. at 4.  They allege that Holland fraudulently disguised the settlement proceeds as a "surreptitious loan" in order to avoid paying his attorneys.  PY Resp. at 5-6, 14.  Without further elaboration or citation to legal authority, Patmon and Young conclude that Holland's alleged scheme to evade his creditors somehow entitles them to a constructive trust and attorney liens that would attach to the interpleaded funds—which are EHLP's assets.  Id.  These theories lack merit.

"Where money or property has been taken from its owner by fraud and deceit, it is impressed with a constructive trust, and when clearly traced may, [and] should be, by a court of equity, returned directly to its owner."  In re CyberCo Holdings, Inc., 382 B.R. 118, 129 (W.D. Mich. Bankr. 2008) (internal marks omitted).  That is, where a plaintiff demonstrates that a defendant was unjustly enriched by acquiring property at the expense of the plaintiff, a constructive trust may be imposed on "the property in question and its traceable product."  Restatement (3d) of Restitution and Unjust Enrichment § 55; see also Sec. & Exchange Comm'n v. Morgan, No. 07-22204, 2008 WL 11333818, at *3 (S.D. Fla. 2008) ("A constructive trust may be imposed both on the original property fraudulently acquired, as well as on the proceeds of the original property.").

Michigan law supports the notion that an attorney can obtain a constructive trust over settlement funds to which an attorney is entitled and that are unconscionably withheld.  Lavan & Assocs., P.C. v. Livingston Cty. Circuit Court Clerk, No. 293052, 2010 WL 4103174, at *3-4 (Mich. Ct. App. Oct. 19, 2010).  Although Patmon and Young may be able to succeed in imposing a constructive trust against the loan proceeds if they are determined to be settlement funds, Patmon and Young are unable to trace the loan proceeds to the royalty assets that gave rise to the interpleaded funds.  Patmon and Young neither allege nor substantiate a claim that the loan proceeds were part of or somehow related to the royalty assets.  Nor could they, as the royalty

assets were transferred to EHLP in 1998—six years before the alleged loan occurred in 2004. Patmon and Young advance the nebulous argument that their work in connection with the 1988 and 1992 litigation enhanced or preserved the value of the royalty assets.  PY Resp. at 6.  However, they allege no specific facts or evidence and have cited no authority supporting the notion that work performed to protect or enhance assets can give rise to a constructive trust over those assets. Thus, Patmon and Young have not demonstrated a viable basis for imposing a constructive trust over the interpleaded funds.

Though the point is not clearly articulated in their briefing, Patmon and Young appear to argue that their claims against Holland could give rise to a constructive trust over the interpleaded funds because EHLP is Holland's alter-ego, nominee, or fraudulent transferee.  PY Resp. at 5-6. The Court previously rejected these theories when asserted by the Government, Order Regarding Mots. for Summ. J. at 9-10, a decision that was affirmed on appeal, United States v. Holland, 953 F.3d 397, 401 (6th Cir. 2020).  However, Patmon and Young contend that this decision does not impact their claims because the circumstances surrounding Holland's conduct in defrauding his attorneys is "widely divergent" from his conduct in evading taxes.  PY Resp. at 5-6.  In fact, the issues are indistinguishable.  Like Patmon and Young, the Government sought to satisfy Holland's debts by reaching EHLP's assets, arguing that "Holland transferred the Royalty Assets to EHLP with the goal of hindering creditors."  Order Regarding Mots. for Summ. J. at 9.  The Court rejected this argument, holding that because the transfer was supported by adequate consideration, neither Holland nor his creditors were any worse off.  Id. at 9-10.  This holding, which broadly addressed the impact of the transfer on all of Holland's creditors, is equally applicable to Patmon and Young.

Even if Patmon and Young successfully established that EHLP was Holland's alter-ego, nominee, or fraudulent transferee, this would only enable the Court to set aside the conveyance of

the royalty assets to EHLP and treat the assets as Holland's own.  See United States v. Porath, 490 F. App'x 789, 795 (6th Cir. 2012) (quoting Mich. Comp. Laws § 566.19) ("A creditor may have a fraudulent conveyance set aside 'to the extent necessary to satisfy [its] claim.'"); Porta-John of Am. Inc. v. United States, 4 F. Supp. 2d 688, 700 (E.D. Mich. 1998) (quoting Kline v. Kline, 305 N.W.2d 297 (Mich. Ct. App. 1981)) ("According to Michigan state law, '[w]here [a] corporation is a mere agent or instrumentality of its shareholders or a device to avoid legal obligations, the corporate entity may be ignored.'").  Thus, Patmon's and Young's claims to the interpleaded funds as Holland's own assets would still depend upon their ability to establish their priority as Holland's creditors.  For the reasons discussed later in this Opinion, they are unable to do so.

Finally, Patmon and Young contend that they have asserted claims for attorney liens that could attach to the interpleaded funds.  PY Resp. at 7, 14.  This argument is unavailing, as no valid attorney lien could be imposed over the interpleaded funds.  Michigan law recognizes two types of attorney liens: "(1) a general, retaining, or possessory lien, or (2) a special, particular, or charging lien."  Laborers Pension Trust Fund—Detroit & Vicinity v. Interior Exterior Specialists Co., 824 F. Supp. 2d 764, 774 (E.D. Mich. 2011) (internal marks omitted).  A retaining lien is an attorney's "right to retain possession of all documents, money, or other property of the client until the fee for services is paid," and depends upon the attorney's actual possession of such property. Gold v. Cadence Innovation, LLC, No. 07-CV-14435, 2009 WL 10680498, at *5 (E.D. Mich. Apr. 27, 2009).  Patmon and Young are plainly not entitled to a retaining lien, as they cannot claim possession of the interpleaded funds held in the Court's registry.

A charging lien, by contrast, is "a lien placed on a client's judgment by an attorney who worked on the matter resulting in the judgment."  Transcontinental Leasing, Inc. v. Mich. Nat'l Bank, NBA, 943 F.2d 52 (Table) (6th Cir. Sept. 5, 1991).  A charging lien attaches only to the

judgment or recovery proceeds from the particular suit on which the attorney worked.  Wipfler v. Warren, 128 N.W. 178, 180 (Mich. 1910); Kysor Indus. Corp. v. D.M. Liquidating Co., 161 N.W.2d 438, 444 (Mich. Ct. App. 1968).  The Court previously held that the interpleaded funds would not be subject to any charging liens Patmon and Young may obtain, as those funds "cannot reasonably be considered a 'judgment or recovery'" stemming from Patmon's and Young's representation of Holland in the 1988 or 1992 litigation.  Order Regarding Mots. for Summ. J. at 13.  Thus, even if Patmon and Young obtained charging liens, those liens would attach to the recovery obtained by Holland in connection with that litigation but would not attach to the wholly unrelated interpleaded funds.

Patmon and Young, therefore, have not asserted any claims against EHLP in the state-court action that could give rise to an interest in the interpleaded funds.

### B.  Claims Against Holland

Because their claims asserted directly against EHLP could not give rise to viable interests in the interpleaded funds, Patmon and Young are limited to pursuing Holland's ownership interest in EHLP.  But as described below, their claims against Holland are junior to those of EHLP's creditors and to the Government's tax liens.

As the Holland Parties correctly explain, the interpleaded funds must first satisfy the partnership-level debts of EHLP before the remainder of those assets would become payable to Holland or his creditors.  EHLP Mem. at 6-7.  The Sixth Circuit has acknowledged that "[p]artnership property is not . . . subject, during the life of the partnership, to the debts of the individual partners."  United States v. Worley, 213 F.2d 509, 512 (6th Cir. 1954).  Rather, "'[a] partner's interest in the partnership property is his share of the surplus after all partnership debts have been paid, and that surplus alone is liable for the separate debts of each partner.'"  Id. (quoting

Adler v. Nicholas, 166 F.2d 674, 678 (10th Cir. 1948)); see also United States v. Antiques Ltd. P'ship, 760 F.3d 668, 672 (7th Cir. 2014) ("A lien on property of a debtor who happens to be a partner . . . in a partnership does not attach to property held by the partnership, but it can attach to the partner's ownership interest." (internal citation omitted)).

Patmon and Young contend that because EHLP interpleaded the funds at issue, it has relinquished its interest in those funds. PY Resp. at 12-13. Accordingly, Patmon and Young maintain that their claims are superior to the claims of EHLP's creditors. Id. This argument lacks merit. EHLP asserted its interpleader counterclaim under the federal interpleader statute, 28 U.S.C. § 1335(a). See EHLP Counterclaim & Cross-Claim ¶ 1 (Dkt. 70). This statute "applies both to 'true' interpleader suits and suits in the nature of interpleader." In re Total Success, Inc., 47 B.R. 861, 863 (D. Ariz. Bankr. 1985). An action "in the nature of interpleader" is properly maintained by a plaintiff who claims an interest in the disputed funds. Id.; see also Texas v. Florida, 306 U.S. 398, 406 (1939). EHLP, therefore, has not relinquished its interest in the interpleaded funds in the present action, and its creditors must be satisfied before the interpleaded funds become payable to Holland or his creditors.

The Court next evaluates the priority of the Government's, Patmon's, and Young's claims to the interpleaded funds, as Holland's creditors.[5] The Government maintains that its tax liens are superior to any constructive trust or other judgment Patmon and Young may obtain against Holland in the state-court action. Gov't Mem. at 14-15. Determining the relative priority of a federal tax lien and other interests in property is a matter of federal law, and the general rule is first in time,

---

[5] Although the Court rejected the Government's position that it could recover Holland's unpaid taxes from assets owned by EHLP on theories of alter-ego, nominee, and fraudulent transfer, this decision did not foreclose the Government from establishing its priority to the interpleaded funds on another basis. See Order Regarding Pl. Mot. for Recons. at 12-13.

first in priority.  <u>United States v. McDermott</u>, 507 U.S. 447, 449 (1993).  Under 26 U.S.C. §§ 6321 and 6322, a tax lien automatically arises at the time assessment is made and attaches to "all property and rights to property, whether real or personal, belonging to [the taxpayer]."  A federal tax lien is not entitled to priority against "any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor," until notice of the lien is filed.  26 U.S.C. § 6323(a).  The statute also confers "superpriority" status to ten classes of claims, irrespective of whether the Government files notice.  <u>Id.</u> § 6323(b).

A competing interest cannot prime a federal tax lien, however, unless it is "choate," meaning that it is perfected such that "'there is nothing more to be done,' i.e., 'when the identity of the lienor, the property subject to the lien, and the amount of the lien are established.'"  <u>Blachy v. Butcher</u>, 221 F.3d 896, 905 (6th Cir. 2000) (quoting <u>United States v. City of New Britain</u>, 347 U.S. 81, 84 (1954)).  Thus, even preferred classes entitled to superpriority status must "have attained the degree of perfection required of other liens and be choate for the purposes of the federal rule."  <u>United States v. Pioneer Am. Ins. Co.</u>, 374 U.S. 84, 89 (1963).

Between 2003 and 2013, the Government filed—and refiled—notices of federal tax liens ("NFTLs") against Holland with the registers of deeds in Oakland and Wayne Counties.  Summ. of NFTLs, Ex. 175 to Gov't Mot. for Summ. J. (Dkt. 239-176).  For liens asserted against personal property, NFTLs must be filed in accordance with the laws of the state in which the property subject to the lien is situated.  26 U.S.C. § 6323(f)(1)(A)(ii).  In Michigan, notices of liens against personal property must be filed in the register of deeds office in the county where the debtor resides.  Mich. Comp. Laws § 211.663(3)(b).  Thus, the Government properly filed its NFTLs in accordance with these statutory requirements.

Patmon and Young contend, with no citation to authority, that the Government's liens for taxes assessed in 2003 lapsed in 2010.  PY Suppl. Br. at 3 (Dkt. 376).  An NFTL remains effective for ten years after the initial tax assessment, at which point the Government must refile the NFTL. 26 U.S.C. § 6323(g)(3); 26 C.F.R. § 301.6323(g)-1(c).  NFTLs remain effective even after this expiration period, however, where the Government has initiated an enforcement action.  26 C.F.R. § 301.6323(g)-1(a)(3)(i); Hoyle v. Comm'r of Internal Revenue, 136 T.C. 163, 473 (2011) ("[F]ailure to refile the NFTL during the refiling period will not affect the effectiveness of the NFTL with respect to property that is the subject matter of a suit filed before the expiration of the refiling period to which the Government is a party.").  Here, the Government filed an NFTL recording its lien for taxes assessed in 2003 on September 15, 2008, and timely refiled an NFTL on December 18, 2013, within ten years of the assessment date.  See Summ. of NFTLs.  In any event, the Government filed the present action on January 9, 2013, which tolled the expiration of all NFTLs.  Accordingly, its liens have not lapsed.

Patmon's and Young's interests in Holland's assets, by contrast, are not choate.  Any judgment for damages, constructive trust, or other remedy obtained in connection with the state-court action would not become choate until that judgment is entered and would not relate back to the time the action was filed to take priority over the federal tax liens.  See Blachy, 221 F.3d at 906 (holding that a constructive trust imposed by a state court in favor of a private creditor does not become choate until the date of the judgment and, therefore, is not entitled to priority over a prior-filed federal tax lien); see also Pioneer, 374 U.S. at 91 (a claim for attorney fees does not become choate until a court decree establishes the final amount owed).  Because Patmon's and Young's interests are not choate, their interests in Holland's assets are necessarily subordinate to the Government's tax liens.

Patmon and Young make cursory reference to the fact that in January 2013, Patmon filed UCC financing statements in Delaware and Michigan regarding the debts allegedly owed by Holland and EHLP.  PY Suppl. Br. at 1 (citing Delaware Financing Stmt., Ex. 1 to PY Suppl. Br., at PageID.12479-12482 (Dkt. 376); Michigan Financing Stmt., Ex. 2 to PY Suppl. Br., at PageID.12484-12488 (Dkt. 376)).  However, the Court need not address this issue because the legal significance of these financing statements is not explained in any level of detail.  See McPherson v. Kelsey, 125 F.3d 989, 995-996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citation and marks omitted)).[6]  This issue, therefore, is unavailing.

Finally, to the extent that Patmon and Young contend that they have attorney liens entitled to superpriority status under 26 U.S.C. § 6323(b)(8), PY Resp. at 7, no valid attorney lien could be imposed over Holland's ownership interest in EHLP.  As determined above, Patmon and Young are not entitled to a retaining lien, as they do not have possession over Holland's or EHLP's property.  Further, even if Patmon and Young obtained charging liens, those liens would attach to the judgment or recovery obtained by Holland but would not attach to Holland's ownership interest in EHLP.

The Government's tax liens, therefore, are entitled to priority over Patmon's and Young's competing interests.  This Court has entered a stipulated judgment holding Holland liable to the

---

[6] In any event, it is unclear whether the financing statements are valid, as financing statements are generally used to perfect security interests.  See Mich. Comp. Laws § 440.9310(1).  Patmon has not identified any underlying secured transaction in which Holland pledged a property interest as collateral.  Moreover, the financing statements were filed on January 15 and January 16, 2013— after the government initiated the present action and filed NFTLs for all tax liens except for the tax liabilities for 2012.  Thus, Patmon's financing statements are junior to the Government's tax liens for all years except 2012.

Government "for federal income taxes, penalties, and interest for the tax years 1991-94, 1996-2004, 2006, and 2008-12, in the total amount of $19,982,932.46 . . . ." 7/13/18 Stipulation & Order (Dkt. 338). However, only $9,883,078.80 currently remains of the interpleaded funds. After EHLP's creditors' claims are satisfied, the Government's tax liens will exhaust the remainder of the interpleaded funds. Consequently, Patmon and Young are not entitled to recover any portion of the interpleaded funds, and the Government and the Holland Parties are entitled to summary judgment as to Patmon's and Young's claims.[7]

**C. Patmon's and Young's Motion to Stay Proceedings**

Patmon and Young urge the Court to stay the present proceedings pending the WCCC's resolution of their state-court claims. They insist that ruling on the merits of their claims at this juncture would contravene previous orders of this Court, the <u>Younger</u> abstention doctrine, and the <u>Rooker-Feldman</u> doctrine. PY Resp. at 8-12, 17-20. The Court addresses each of these arguments in turn and concludes that a stay is not warranted.

**1. Previous Orders**

Patmon and Young contend that granting the Government's and the Holland Parties' motions would be inconsistent with this Court's prior orders deferring to the WCCC's resolution of claims advanced in the state-court action. <u>Id.</u> at 8-11. As explained below, this argument is unavailing.

---

[7] The Government filed a conditional motion to appoint a receiver, which it stated would be moot if the Court entered the Government and the Holland Parties' proposed stipulated order of dismissal. <u>See</u> Mot. to Appoint Receiver at 2 (Dkt. 362). The proposed dismissal order acknowledges settlement by the Government of all claims by EHLP creditors, except for a claim by Clarence B. Tucker, Sr. PLLC, which is to be dismissed without prejudice. Given that summary judgment against Patmon and Young is warranted, it is appropriate to enter the proposed dismissal order and deny, as moot, the Government's motion to appoint a receiver.

First, Patmon and Young cite the Court's April 30, 2015 order granting EHLP's emergency motion for judicial sale of the royalty assets.  Id. at 8.  This order provided that the interpleaded funds would be held in the Court's registry rather than being paid to EHLP.  4/30/15 Order ¶ 4(a).  Far from preventing the Court from resolving Patmon's and Young's claims, the order provided that the proceeds of the sale would be interpleaded pending determination of the parties' rights, claims, and interests in the funds.  Id. ¶ 6.  At the present stage of the litigation, the Court has determined the parties' respective priorities and will distribute the interpleaded funds accordingly.

Second, Patmon and Young rely on a September 3, 2015 order, PY Resp. at 10, which states the following:

> [A]ny determinations made by the WCCC will have <u>res judicata</u> effect in the present action. . . . Likewise, if necessary to determine the merits of the present action, the Court will await the WCCC's determination of Mr. Patmon's interest in Holland's property, the validity and amount of his liens, and the status of a constructive trust.  Accordingly, the Court does not foreclose the possibility of entering an order of stay in the future should it be appropriate.

9/3/15 Order at 12-13 (Dkt. 143) (emphasis in original).  This order does not entitle Patmon and Young to a stay of the proceedings while the WCCC finally resolves their claims in the state-court action.  The order clearly provided that the Court would await the WCCC's determinations only "if necessary to determine the merits of the present action" and acknowledged only "the possibility of entering an order of stay . . . should it be appropriate."  Id.  At the present stage, it is no longer necessary to await resolution of the state-court action because, as discussed above, the claims against Holland, even if successful, cannot give rise to viable interests in the interpleaded funds.[8]

Finally, Patmon and Young cite a March 20, 2018 order denying the Government's motion for partial reconsideration.  PY Resp. at 19.  In this order, the Court declined to rule as a matter of

---

[8] Made in the context of ruling on a motion for a stay rather than for summary judgment, the reference to res judicata in the prior order (authored by the judge originally assigned to this case)

law that the Government would be entitled to recover its tax liens from the interpleaded funds once EHLP's partnership-level debts were satisfied.  Order Regarding Pl. Mot. for Recons. at 9-10.  The Court reasoned that the matter was not properly presented on a motion for reconsideration but acknowledged that the Court may agree with the Government's theory if the matter were presented by way of a dispositive motion.  Id. at 10.  The Court likewise declined to rule as a matter of law that the Government's claim to Holland's ownership interest in EHLP would be senior to any claims that Patmon and Young might establish in the state-court action, emphasizing that the merits of Patmon's and Young's claims had yet to be determined by the WCCC.  Id. at 10-11.

Contrary to Patmon's and Young's argument, this order did not foreclose the Court from resolving at a later stage the merits of the competing claims to the interpleaded funds.  The order expressly acknowledged that the Court might agree with the Government's position that its claim was superior to Patmon's and Young's, if that theory were properly presented by way of a dispositive motion.  The government has now presented that theory through just such a motion.  And although the WCCC has not fully resolved the entirety of the state-court action, Patmon and Young have failed to demonstrate that any judgment they might obtain would give rise to a priority interest in the interpleaded funds.

Accordingly, none of the Court's prior rulings prevents it from determining the merits of Patmon's and Young's claims at the present stage of the litigation.

---

was apparently a statement of intent not to act inconsistently with future state-court determinations, rather than a full-dress treatment of how and when res judicata might apply.  Presented now in the context of summary judgment motions, res judicata has been squarely addressed in this Opinion and rejected on the basis of there being no final state-court judgment.  However, the present summary judgment ruling produces the same outcome that would have been obtained had this Court ruled that res judicata applied to the interlocutory state-court order dismissing Patmon's and Young's claims against EHLP.  Thus, the prior reference to res judicata is irrelevant to the summary judgment issue of whether Patmon and Young have viable claims to the interpleaded funds and to the separate issue of whether a stay of the proceedings is appropriate.

## 2. <u>Younger</u> Abstention

Patmon and Young contend that this Court must abstain from determining this matter in deference to the state-court proceedings, in accordance with <u>Younger v. Harris</u>, 401 U.S. 37 (1971). PY Resp. at 12. "The <u>Younger</u> doctrine is a judicial creation born from the principles of equity, comity, and federalism . . . [and] permits federal courts to withhold authorized jurisdiction in certain circumstances to avoid undue interference with state court proceedings." <u>Hill v. Snyder</u>, 878 F.3d 193, 204 (6th Cir. 2017) (citation omitted). But the <u>Younger</u> doctrine is "a limited carve-out to federal courts' 'virtually unflagging obligation' to exercise their jurisdiction. <u>Id.</u> at 205 (quoting <u>Deakins v. Monaghan</u>, 484 U.S. 193, 203 (1988)). The Supreme Court has restricted application of the <u>Younger</u> doctrine to three "exceptional" circumstances: "[i] state criminal prosecutions, [ii] civil enforcement proceedings, and [iii] civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." <u>Sprint Commc'ns, Inc. v. Jacobs</u>, 571 U.S. 69, 73 (2013) (internal marks omitted). In the absence of such exceptional circumstances, the pendency of a state-court action does not prevent a federal court from exercising jurisdiction over the same matter. <u>Id.</u>

No exceptional circumstances exist here, as the WCCC action is neither a criminal prosecution nor a civil enforcement action involving the interpleaded funds. As discussed above, 26 U.S.C. § 7403(c) mandates that this Court determine the merits and priorities of all claims to the interpleaded funds. Further, this Court's determination that Patmon and Young are unable to assert viable claims to the interpleaded funds in no way hinders or interferes with the WCCC's ability to adjudicate the remaining matters pending in that litigation. The WCCC is free to determine the merits of Patmon's and Young's claims for attorney fees, attorney liens, and a

constructive trust; this Court has simply held that none of these claims could possibly give rise to an interest in the interpleaded funds.

### 3. **Rooker-Feldman** Doctrine

Finally, Patmon and Young contend that this Court may not exercise its jurisdiction in a manner that voids the WCCC action under the Rooker-Feldman doctrine.[9]  PY Resp. at 11-12. The Rooker-Feldman doctrine prevents federal courts, other than the Supreme Court, from conducting appellate review of final state-court judgments.  VanderKodde v. Mary Jane M. Elliott, P.C., 951 F.3d 397, 402 (6th Cir. 2020).  The doctrine "applies only to the 'narrow' set of 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced . . . .'"  Id. (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).  It does not, however, operate to bar federal district courts from "exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court."  Exxon, 544 U.S. at 293.

In evaluating whether the Rooker-Feldman doctrine applies, courts must evaluate the source of the injury alleged in the complaint.  VanderKodde, 951 F.3d at 402.  If the source of the injury is the state-court judgment itself, the Rooker-Feldman doctrine bars the claim; if the injury derives from another source, such as a third party's actions, the doctrine does not apply.  Id.  Here, none of the parties claims an injury as a result of a state-court judgment, or asks this Court to review any order entered by the WCCC.  To the contrary, the Government and the Holland Parties ask this Court to recognize the WCCC's dismissal of EHLP from the state-court litigation and to accord that ruling preclusive effect.  While this Court rejects that view, its decision does not

---

[9] This doctrine derives its name from Rooker v. Fid. Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

contradict the state court's determination of any issue, much less any state court judgment. Consequently, the <u>Rooker-Feldman</u> doctrine does not apply.

## IV.    CONCLUSION

For the reasons set forth above, the Court grants the Government's and the Holland Parties' motions for summary judgment against Patmon and Young (Dkts. 361, 363), denies Patmon and Young's motion to stay the proceedings (Dkt. 370), and denies as moot the Government's motion to appoint a receiver (Dkt. 362).  The Court will also enter the proposed stipulated order submitted by the Government and the Holland Parties with certain technical modifications.  A judgment will also be entered.

SO ORDERED.

Dated:  November 13, 2020                          s/Mark A. Goldsmith
        Detroit, Michigan                          MARK A. GOLDSMITH
                                            United States District Judge